UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00133-LLK

SANDRA LOU BOILS                     PLAINTIFF

v.

ANDREW SAUL, Commissioner of Social Security        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are a Dockets # 18 and 24. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 14.)

Because the ALJ's finding that Plaintiff can perform light work is not supported by substantial evidence, the Court will REMAND this matter to the Commissioner for a new decision and any further administrative proceedings deemed necessary and appropriate by the Commissioner.

**The ALJ found that the *Drummond* case bound her to find that Plaintiff can perform light work.**

In May 2015, the previous ALJ issued a decision denying Plaintiff's prior disability claim and finding that she can perform light work. (AR at 87, 91.) Plaintiff filed a new application for benefits.

In January 2017, the Commissioner's non-examining program physician, Donna Sadler, M.D., adopted the previous ALJ's findings "as written" (including the finding that Plaintiff can perform light work) because, according to Dr. Sadler, there is no new and material evidence "from any source" indicating a deterioration in Plaintiff's medical condition. (AR at 146.)

In her March 2018 decision denying Plaintiff's disability claim, the ALJ gave Dr. Sadler's findings "great weight" (AR at 639[1]) and concluded that Sixth Circuit caselaw (to which the Commissioner has acquiesced for cases arising within the Sixth Circuit) legally bound her to the previous ALJ's finding that Plaintiff can perform light work:

> The undersigned's finding with regard to the claimant's residual functional capacity is in compliance with *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) (see also Acquiescence Ruling 98-4(6)) and *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990) (see also Social Security Acquiescence Ruling 98-3(6)), which held that, absent evidence of improvement or deterioration in a claimant's condition, a subsequent [ALJ] is bound by the findings of a previous [ALJ].

(AR at 640.)

**The ALJ gave "little weight" to the treating physician's findings, which would preclude light work.**

In November 2017, Plaintiff's treating physician, Tracy Glenn Cross, M.D., wrote a letter in support of Plaintiff's disability claim (AR at 627), opining limitations that, if accepted, would preclude performance of light work. Specifically, Dr. Cross opined limitations that would not allow Plaintiff to stand/walk for 6 hours per 8-hour workday as required to perform light work. *See* Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday [and] [s]itting may occur intermittently during the remaining time.").

Dr. Cross attributed Plaintiff's inability to engage in prolonged standing/walking to the residual effects of Plaintiff's May 2017 thyroidectomy (AR at 585), paroxysmal hypotension, degenerative disc disease of the lumbar and cervical spine, and radiculopathy affecting the lower extremity. (AR at 627.) According to Dr. Cross, Plaintiff "continues to have episodes of weakness and fatigue after her thyroidectomy … to the point of being exhausted [and] requiring rest with ambulation of less than twenty feet." (*Id.*) "She has paroxysmal hypotension related to body position making standing a fall risk." (*Id.*)

---

[1] The ALJ's decision is in the supplemented administrative record at Docket # 22, which includes pages 628 through 647 of the administrative record.

"She has had fusion of C5-C6 [resulting in] pain in her neck and lower back with greater than thirty minutes of standing or ambulating requiring her to lie flat." (*Id.*) "During ambulation she has left leg radiculopathy." (*Id.*)

The ALJ gave Dr. Cross's findings, which would preclude light work, "little weight." (AR at 639.)

**The ALJ's finding that Plaintiff can perform light work is not supported by substantial evidence.**

Plaintiff argues that the ALJ's finding that she can perform light work is not supported by substantial evidence and is not in accord with applicable legal standards. (Docket # 18 at 2.) The argument is persuasive for five reasons.

First, the ALJ's finding was based on an erroneous interpretation of *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) as binding her to the previous ALJ's residual functional capacity (RFC) findings (which limited Plaintiff to light work) in the absence of affirmative evidence of "deterioration in [Plaintiff's] condition." (AR at 640.) The Sixth Circuit recently clarified that *Drummond* has become widely misunderstood -- even in unpublished Sixth Circuit opinions -- and that *Drummond* was never intended to preclude an ALJ "from giving a fresh look to a new application containing new evidence ... that covers a new period of alleged disability" or "from revisiting [an] earlier finding ... unless [the claimant] offered new and material evidence of a changed condition." *Earley v. Comm'r*, 893 F.3d 929, 931 (6th Cir. 2018) (calling into doubt *Lester v. Comm'r*, 596 F. App'x 387, 389 (6th Cir. 2015) and *Haun v. Comm'r*, 107 F. App'x 462, 464 (6th Cir. 2004)).[2]

---

[2] Almost universally, courts interpreted *Drummond* as holding that administrative res judicata benefits claimants to prohibit ALJs from finding fewer restrictions absent new and material evidence supporting medical improvement. A split of authority emerged as to whether res judicata also prohibits ALJs from finding additional restrictions absent new and material evidence of medical deterioration. *Earley* clarified that courts had "overread" *Drummond*, which was based only on principles of res judicata "with an accent on the word 'principles'" and was never intended to create rigid rules based on medical improvement or deterioration. *Earley*, 893 F.3d at 933, 934. A subsequent ALJ should always determine a claimant's RFC based on a "fresh look" at the evidence. *Id.* at 931. It just so happened that *Drummond* was that "black swan" case in which the fact that Drummond had previously been limited to sedentary work was "such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence." *Id.* at 934 (quoting *Albright v. Comm'r*, 174 F.3d 473, 477-78 (4th Cir. 1999)).

Second, even under the ALJ's (incorrect) interpretation of *Drummond* as binding her to the previous ALJ's RFC findings absent affirmative evidence of medical deterioration, Dr. Cross's findings (which would preclude light work) constituted such evidence.

Third, the ALJ gave Dr. Cross's findings "little weight" because Dr. Cross "did not provide specific functional limitations caused by [Plaintiff's medical] conditions." (AR at 639.) While Dr. Cross's findings were in the form of a letter (as opposed to completion of the standard physical RFC form), they were specific that Plaintiff's medical impairments do not allow her to stand/walk sufficiently to perform light work.

Fourth, in finding that Plaintiff can perform light work, the ALJ gave Dr. Sadler's findings "great weight." (AR at 639.) Dr. Sadler gave her opinion in January 2017, before Plaintiff's May 2017 thyroidectomy. (AR at 146, 585.) The ALJ lacked the medical expertise to opine that Plaintiff's post-thyroidectomy condition is "now controlled with synthyroid" to the point of being "nonsevere," or vocationally insignificant. (AR at 634.) This is particularly so in light of the contradictory opinion of the treating physician, Dr. Cross, that Plaintiff "continues to have episodes of weakness and fatigue after her thyroidectomy … to the point of being exhausted [and] requiring rest with ambulation of less than twenty feet." (AR at 627.)

Fifth, the ALJ gave Dr. Sadler's opinion "great weight" (AR at 639), despite the fact that Dr. Sadler's findings are identical to the prior findings of the Commissioner's single decisionmaker (SDM), Melanie Keene. (Compare findings at AR 110-12 and 144-46.) As in *Johnson v. Comm'r*, "[t]his court cannot help but note that the administrative record reflects that [the program physician apparently] did not reach [her] conclusion[s] independently" based on a review of the medical records. *Johnson v. Comm'r*, 652 F.3d 646, 650 (6th Cir. 2011). Rather, it appears that an individual with no formal medical training or credentials (e.g., Ms. Keene) reviewed the medical records, formulated an opinion, and Dr. Sadler simply signed off on it (verbatim).

**Plaintiff's remaining arguments are unpersuasive.**

Plaintiff makes two additional arguments, both of which are unpersuasive.

First, Plaintiff argues that "the [ALJ] erred in failing to give controlling weight to the opinion of [Dr. Cross]." (Docket # 18 at 3.) Dr. Cross's opinion, if accepted in its entirety, would preclude even sedentary work. For example, Dr. Cross opined that, since her thyroidectomy, Plaintiff is "having episodes of fatigue that render her incapacitated." (AR at 627.) "These episodes present many times requiring hours of rest." (*Id.*) "Due to her medical co-morbidities, making scheduled events is impossible." (*Id.*) "This patient has little ability to maintain and perform normal daily activities." (*Id.*) A treating source's medical opinion is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2). To the extent they preclude sedentary work, Dr. Cross's findings are unsupported by sufficient objective medical data to entitle them to controlling weight.

Second, Plaintiff argues that "the [ALJ] erred by deeming [Plaintiff's] foot impairment as 'non-severe.'" (Docket # 18 at 5.) To be disabling, an impairment must be "severe," or vocationally significant, and must have "lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Plaintiff carries the burden of showing that she has a severe impairment satisfying the twelve-month durational requirement. *Edwards v. Comm'r*, 113 F. App'x 83, 85 (6th Cir. 2004). Plaintiff underwent foot surgery to correct hammertoe and/or Morton's neuroma on October 27, 2017; the administrative hearing was held eleven days later on November 7, 2017; and the ALJ issued her decision approximately five months after Plaintiff's foot surgery on March 28, 2018. (AR at 627, 642.) According to Dr. Cross, "the outcome of the surgery cannot be determined at this point." (AR at 627.) Because it was too early to know whether Plaintiff would suffer residual post-surgical foot limitations (in addition to those contemplated by the ALJ's RFC finding), the ALJ did not err in finding that Plaintiff did not prove she suffers from a severe foot impairment.

**Order**

For the foregoing reasons, this matter is hereby REMANDED to the Commissioner for a new decision and any further administrative proceedings deemed necessary and appropriate by the Commissioner.

March 11, 2020

Lanny King, Magistrate Judge
United States District Court